AMERICAN CONSTRUCTION COMPANY *v.* JACK-
SONVILLE, TAMPA AND KEY WEST
RAILWAY COMPANY.

SAME *v.* PENNSYLVANIA COMPANY FOR INSUR-
ANCES ON LIVES AND GRANTING ANNUITIES.

ORIGINAL.

Nos. 14, 15, original.　Argued March 6, 7, 1893. — Decided March 27, 1893.

A writ of mandamus does not lie to the United States Circuit Court of
Appeals to review, or to the Circuit Court of the United States to disre-
gard, a decree of the Circuit Court of Appeals, made on appeal from an
interlocutory order of the Circuit Court, and alleged to be in excess of
its powers on such an appeal, but which might be made on appeal from
the final decree, when rendered.

Under the act of March 3. 1891, c. 517, § 6, this court has power, in a case
made final in the Circuit Court of Appeals, although no question of law
has been certified by that court to this, to issue a writ of *certiorari* to
review a decree of that court on appeal from an interlocutory order of
the Circuit Court; but will not exercise this power, unless it is necessary
to prevent extraordinary inconvenience and embarrassment in the conduct
of. the cause.

This court will not issue a writ of *certiorari* to review a decree of the Cir-
cuit Court of Appeals, by which, on appeal from an interlocutory order
of the Circuit Court, granting an injunction, appointing a receiver of a
railway company, and authorizing him to issue receiver's notes, the in-
junction has not only been modified, but the order has been reversed in
other respects.

A decree of the Circuit Court of Appeals, by which, on appeal from an
interlocutory order of the Circuit Court, vacating an order appointing a
receiver, the order appealed from has been reversed, the receivership
restored and the case remanded to the Circuit Court to determine who
should be receiver, will not be reviewed by this court by writ of *certio-
rari*, either because no appeal lies from such an interlocutory order, or
because the order appointing the receiver was made by a Circuit Judge
when outside of his circuit.

A Circuit Judge having taken part in a decree of the Circuit Court of
Appeals on an appeal from an interlocutory order setting aside a pre-
vious order of his in the case, this court granted a rule to show cause
why a writ of *certiorari* should not issue to the Circuit Court of Appeals
to bring up and quash its decree because he was prohibited by the act of
. March 3, 1891, c. 517, § 3, from sitting at the hearing.

THESE were two petitions to this court, each praying, in the alternative, for a writ of mandamus, or a writ of *certiorari*, to the United States Circuit Court of Appeals for the Fifth Circuit.

In the first case, No. 14, it appeared that the following proceedings were had in the Circuit Court of the United States for the Northern District of Florida.

On July 6, 1892, the American Construction Company, a corporation of Illinois, and a stockholder in the Jacksonville, Tampa and Key West Railway Company, a corporation of Florida, engaged in operating a railroad in that State, filed a bill in equity, in behalf of itself and of such other stockholders as might come in, against the railway company, and against its president and directors, citizens of other States; alleging that they had made a contract in its behalf, which was illegal and void, and unjust to its stockholders, and had declined to have an account taken; and praying for an account, a receiver and an injunction.

On the filing of the bill, Judge Swayne, the District Judge, made a restraining order, by which, until the plaintiff's motion for an injunction and for the appointment of a receiver could be heard and determined, the railway company and its officers and agents were enjoined and restrained from remitting, sending or removing any of its income, tolls and revenues from the jurisdiction of the court, and from selling, disposing of, hypothecating or pledging any of its bonds of a certain issue at less than their par value.

On August 4, 1892, Judge Swayne, after a hearing of the parties, made an order, appointing Mason Young receiver of all the property of the railway company ; enjoining the railway company, its officers and agents, and all persons in possession of its property, from interfering with the possession, control, management and operation of the property, and from obstructing the exercise of the receiver's rights and powers, or the performance of his duties; and continuing the restraining order of July 6, until the further order of the court.

On August 5, Judge Swayne, on a petition of the receiver, and after hearing him and the parties, made an order, author-

izing him to pay certain interest and obligations of the railway company out of the income and money coming into his hands as receiver, or, if those should be insufficient for that purpose, to issue receiver's notes in payment of such interest and obligations, or, at his discretion, to borrow money on such receiver's notes for that purpose, the amount of such notes, outstanding at one time, not to exceed $125,000.

On August 27, the railway company prayed and was allowed an appeal from the orders of August 4 and August 5 to the United States Circuit Court of Appeals for the Fifth Circuit, and gave bond to prosecute the appeal.

On November 18, the construction company moved the Circuit Court of Appeals to dismiss the appeal, because that court had no jurisdiction to review the action of the Circuit Court in making those orders or either of them.

On January 16, 1893, the Circuit Court of Appeals, held by Circuit Judges Pardee and McCormick and District Judge Locke, denied the motion to dismiss the appeal; and entered a decree, reversing and setting aside the orders appealed from, except as to the injunction; modifying the injunction so as to permit the railway company to send away money for the payment of its bonds which had been regularly sold, and for the purchase of necessary equipment and supplies, and to restrain it from disposing of, at less than their par value, such only of the bonds of the issue mentioned, as remained the property of the company; and instructing the Circuit Court to modify accordingly the restraining order of July 6, continued by the order of August 4, and to vacate the order of August 4, appointing a receiver, to discharge the receiver, and to restore the property of the company to its officers.

On January 23, the construction company filed a petition for a rehearing, upon the grounds, among others, that the Circuit Court of Appeals had no jurisdiction to review an order appointing a receiver; and that its decree did not allow the receiver time to settle his accounts, nor provide for the payment of his notes in the hands of *bona fide* holders for value.

On January 30, the Circuit Court of Appeals denied a rehearing, and sent down a mandate in accordance with its

decree; and on February 1, the mandate was filed in the Circuit Court.

On February 2, the construction company moved this court for leave to file a petition for a writ of mandamus to the Circuit Court of Appeals to dismiss so much of the appeal of the railway company as undertook to bring before that court the action of the Circuit Court in appointing a receiver, and in authorizing him to borrow money upon receiver's notes; or, in the alternative, for a writ of *certiorari* to the Circuit Court of Appeals to bring up its decree for review by this court.

In the second case, No. 15, beside the facts above stated, the following facts appeared:

On July 23, 1892, the Pennsylvania Company for Insurances on Lives and Granting Annuities, a corporation of Pennsylvania, as trustee under a mortgage of the property of the railway company to secure the payment of its bonds of the issue aforesaid, presented to Judge Pardee a bill in equity, addressed to the same Circuit Court, against the railway company, praying for a foreclosure of the mortgage, for the appointment of a receiver, and for an injunction.

On the same day, upon this bill, and with the consent of the railway company, Judge Pardee signed an order, appointing Robert B. Cable receiver of all its property; and declaring that the appointment was provisional, to the extent that any one having an interest in the property of the railway company might show cause within thirty days why the appointment should not be confirmed; and that the appointment should not "affect or forestall any action the court or any of its judges may hereafter see proper to take on any bill heretofore filed in this court against said railroad company, wherein a receivership has also been prayed for." This bill and order were directed by Judge Pardee to be filed of July 23, 1892, and were filed by the clerk as of that day.

On July 29, the construction company filed in the Circuit Court a petition of intervention, setting forth the previous proceedings in the first case, and praying that the order appointing Cable receiver might be set aside and vacated.

On August 4, on this petition, Judge Swayne, holding the Circuit Court, made an order, setting aside and vacating the order appointing Cable receiver, and staying all further proceedings in the cause until the further order of the court.

On August 23, the Pennsylvania Company prayed and was allowed an appeal from that order of Judge Swayne to the United States Circuit Court of Appeals for the Fifth Circuit, and gave bond to prosecute its appeal.

On November 18, the construction company moved to dismiss this appeal, because the Circuit Court of Appeals had no jurisdiction of an appeal from that order, and because it appeared by the pleadings and papers on file that the suit was a collusive one between the appellant and the railway company.

On January 16, 1893, the Circuit Court of Appeals, held by Circuit Judges Pardee and McCormick and District Judge Locke, denied the motion to dismiss the appeal; and entered a decree, by which that order was reversed, "the stay of proceedings dissolved, the receivership restored," and the cause remanded to the Circuit Court, with instructions to proceed therein in accordance with the opinion rendered by the Circuit Court of Appeals, by which it was "left with the Circuit Court to determine what person is the proper one to execute the office of receiver in this case, and to continue receiver Cable, or to appoint a more suitable person in his place, as the relations of the parties and the character and condition of the property may, in the judgment of that court, require."

On January 23, the construction company filed a petition for a rehearing, upon the following grounds:

1st. That the order appealed from was purely in the discretion of the Circuit Court, and not subject to appeal.

2d. That the order of July 23, 1892, appointing Cable receiver, was a nullity, because made by Judge Pardee in the State of Ohio, outside of his circuit, and while the Circuit Court was in session in the district where the suit was pending.

3d. That, this order being a nullity, there was no receivership to be restored; and that the Circuit Court of Appeals had no power or jurisdiction to vacate the order of the Circuit Court appointing or refusing to appoint a receiver.

4th. That, if the order of July '23, 1892, was valid, the Circuit Judge who made it could not sit in the Circuit Court of Appeals at the hearing of the cause, and was expressly prohibited from so doing by the following provision in the act creating that court: "Provided that no justice or judge, before whom a cause or question may have been tried or heard in the District Court or existing Circuit Court, shall sit on the trial or hearing of such cause or question in the Circuit Court of Appeals." Act of March 3, 1891, c. 517, § 3, 26 Stat. 827.

5th. That it should be left open to the Circuit Court to inquire whether the suit was collusive, and thereupon either to appoint a receiver or to dismiss the bill.

On January 30, the Circuit Court of Appeals denied a rehearing, and sent down a mandate in accordance with its decree; and on February 1, this mandate was filed in the Circuit Court.

On February 2, the construction company moved this court for leave to file a petition for a writ of mandamus to the Circuit Court of Appeals to dismiss so much of the appeal of the Pennsylvania Company as undertook to bring before that court the action of the Circuit Court in vacating and setting aside the order for the appointment of a receiver; or, in the alternative, for a writ of *certiorari* to the Circuit Court of Appeals to bring up its decree for review by this court.

This court gave leave to file both petitions of the American Construction Company, stayed proceedings under the mandates of the Circuit Court of Appeals, and ordered notice to the railway company and to the Pennsylvania Company of a renewal of the motions for writs of mandamus or writs of *certiorari*, returnable March 6.

The petitioner gave notice to those companies that on that day it would move accordingly for writs of mandamus or *certiorari* to the Circuit Court of Appeals, as prayed for in the petitions; and would also, in the alternative, move for a writ of mandamus to the Circuit Court to disregard the mandates of the Circuit Court of Appeals, except so far as they affirmed, modified or reversed the injunction orders of the Circuit Court,

and especially to disregard the parts of those mandates which undertook to modify or reverse any order appointing or refusing to appoint a receiver.

At the time so appointed, the parties appeared, and the motions were argued.

*Mr. William B. Hornblower* and *Mr. Eugene Stevenson,* (with whom was *Mr. William Pennington* on the brief,) for the petitioner in both cases.

*Mr. John G. Johnson* and *Mr. Thomas Thacher* opposing in No. 14.

*Mr. C. M. Cooper,* (with whom was *Mr. J. C. Cooper* on the brief,) opposing in No. 15.

MR. JUSTICE GRAY, after stating the facts, delivered the opinion of the court.

By the Constitution of the United States, in cases to which the judicial power of the United States extends, and of which original jurisdiction is not conferred on this court, "the Supreme Court shall have appellate jurisdiction, with such exceptions and under such regulations as the Congress shall make.", Constitution, art. 3, sec. 2. This court, therefore, as it has always held, can exercise no appellate jurisdiction, except in the cases, and in the manner and form, defined and prescribed by Congress. *Wiscart* v. *Dauchy,* 3 Dall. 321, 227; *Durousseau* v. *United States,* 6 Cranch, 307, 314; *Barry* v. *Mercein,* 5 How. 103, 119; *United States* v. *Young,* 94 U. S. 258; *The Francis Wright,* 105 U. S. 381; *National Exchange Bank* v. *Peters,* 144 U. S. 570, 572.

Under the Judiciary Act of 1789 and other acts embodied in the Revised Statutes, the appellate jurisdiction of this court from the Circuit Court of the United States was limited to final judgments at law, and final decrees in equity or admiralty. Acts of September 24, 1789, c. 20, §§ 13, 22, 1 Stat. 81, 84; March 3, 1803, c. 40, 2 Stat. 244; Rev. Stat. §§ 691, 692. No appeal, therefore, lay to this court from an order of the Circuit Court, granting or refusing an injunction, or appoint-

ing or declining to appoint a receiver *pendente lite*, or other interlocutory order, until after final decree. *Hentig* v. *Page*, 102 U. S. 219 ; *Keystone Co.* v. *Martin*, 132 U. S. 91; *Lodge* v. *Twell*, 135 U. S. 232.

By the same statutes, this court is empowered. to issue writs of mandamus, "in cases warranted by the principles and usages of law, to any courts appointed under the authority of the United States." Act of September 24, 1789, c. 20; § 13, 1 Stat. 81; Rev. Stat. § 688.

But a writ of mandamus cannot be used to perform the office of an appeal or writ of error, to review the judicial action of an inferior court. *Ex parte Whitney*, 13 Pet. 404; *Ex parte Schwab*, 98 U. S. 240; *Ex parte Perry*, 102 U. S. 183; *Ex parte Morgan*, 114 U. S. 174. It does not, therefore, lie to review a final judgment or decree of the Circuit Court, sustaining a plea to the jurisdiction, even if no appeal or writ of error is given by law. *Ex parte Newman*, 14 Wall. 152; *Ex parte Baltimore & Ohio Railroad*, 108 U. S. 566 ; *In re Burdett*, 127 U. S. 771; *In re Pennsylvania Co.*, 137 U. S. 451, 453.

Least of all, can a writ of mandamus be granted to review a ruling or interlocutory order made in the progress of a cause : for, as observed by Chief Justice Marshall, to do this " would be a plain evasion of the provision of the act of Congress that final judgments only should be brought before this court for reëxamination ; " would " introduce the supervising power of this court into a cause while depending in an inferior court, and prematurely to decide it ; " would allow an appeal or writ of error upon the same question to be " repeated; to the great oppression of the parties ; " and " would subvert our whole system of jurisprudence." *Bank of Columbia* v. *Sweeny*, 1 Pet. 567, 569 ; *Life & Fire Ins. Co.* v. *Adams*, 9 Pet. 573, 602.

This court, and the Circuit and District Courts of the United States, have also been empowered by Congress " to issue all writs, not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." Act of September 24, 1789, c. 20, § 14, 1 Stat. 81 ; Rev. Stat. § 716.

Under this provision, the court might doubtless issue writs of *certiorari*, in proper cases. But the writ of *certiorari* has not been issued as freely by this court as by the Court of Queen's Bench in England. *Ex parte Vallandigham*, 1 Wall. 243, 249. It was never issued to bring up from an inferior court of the United States for trial a case within the exclusive jurisdiction of a higher court. *Fowler* v. *Lindsey*, 3 Dall. 411, 413; *Patterson* v. *United States*, 2 Wheat. 221, 225, 226; *Ex parte Hitz*, 111 U. S. 766. It was used by this court as an auxiliary process only, to supply imperfections in the record of a case already before it; and not, like a writ of error, to review the judgment of an inferior court. *Barton* v. *Petit*, 7 Cranch, 288; *Ex parte Gordon*, 1 Black, 503; *United States* v. *Adams*, 9 Wall. 661; *United States* v. *Young*, 94 U. S. 258; *Luxton* v. *North River Bridge*, 147 U. S. 337, 341.

There is, therefore, no ground for issuing either a writ of mandamus, or a writ of *certiorari*, as prayed for in these petitions, unless it be found in the act of March 3, 1891, c. 517, entitled "An act to establish Circuit Courts of Appeals, and to define and regulate in certain cases the jurisdiction of the courts of the United States, and for other purposes." 26 Stat. 826.

By section 4 of this act, "the review, by appeal, by writ of error or otherwise, from the existing Circuit Courts shall be had only in the Supreme Court of the United States, or in the Circuit Courts of Appeals hereby established, according to the provisions of this act, regulating the same;" and by section 14, "all acts and parts of acts, relating to appeals or writs of error, inconsistent with the provisions for review by appeals or writs of error in the preceding sections five and six of this act, are hereby repealed."

By section 5, appeals or writs of error may be taken from the Circuit Court directly to this court in cases where the jurisdiction of the court below is in issue, (the question of jurisdiction alone being brought up,) in prize causes, in cases of convictions of capital or otherwise infamous crimes, and in cases involving the construction or application of the Constitution of the United States, or the constitutionality of a law

of the United States, or the validity: or construction of a treaty, or where the constitution or law of a State is claimed to be in contravention of the Constitution of the United States.

By section 6, the appellate jurisdiction from final decisions of the Circuit Court, in all cases other than those provided for in section 6, is conferred upon the Circuit Court of Appeals, "unless otherwise provided by law;" and its judgments or decrees "shall be final" in all cases in which the jurisdiction depends entirely on the citizenship of the parties, as well as in cases arising under the patent laws, the revenue laws, or the criminal laws, and in admiralty cases.

By the same section, however, the Circuit Court of Appeals "in any such subject within its appellate jurisdiction" may, at any time, certify to this court questions or propositions of law, and this court may thereupon either instruct it on such questions, or may require the whole case to be sent up for decision; and any case "made final in the Circuit Court of Appeals" may be required by this court, by *certiorari* or otherwise, to be certified " for its review and determination, with the same power and authority in the case" as if it had been brought up by appeal or writ of error.

By a further provision in the same section, (which has no special bearing on these cases,) an appeal or writ of error or review by this court is given as of right in all cases not made final in the Circuit Court of Appeals, wherein the matter in controversy exceeds $1000.

The only provision in the act, authorizing appeals from interlocutory orders or decrees of the Circuit Courts, is in section 7, which provides that where, upon a hearing in equity, " an injunction shall be granted or continued by an interlocu tory order or decree, in a cause in which an appeal from a final decree may be taken under the provisions of this act to the Circuit Court of Appeals, an appeal may be taken from such interlocutory order or decree granting or continuing such injunction to the Circuit Court of Appeals;" "and the proceedings in other respects in the court below shall not be stayed, unless otherwise ordered by that court, during the pendency of such appeal."

By section 12, the Circuit Court of Appeals has the powers specified in section 716 of the Revised Statutes, that is to say, to issue all writs, not specifically provided for by statute, which may be necessary for the exercise of its jurisdiction, and agreeable to the usages and principles of law.

The effect of these provisions is that, in any case in which the jurisdiction of the Circuit Court depends entirely on the citizenship of the parties, (as in the cases now before us,) and in which the jurisdiction of that court is not in issue, the appeal given from its judgments and decrees, whether final or interlocutory, lies to the Circuit Court of Appeals only; and the judgments of the latter court are final, unless either that court certifies questions or propositions of law to this court, or else this court, by *certiorari* or otherwise, orders the whole case to be sent up for its review and determination.

The primary object of this act, well known as a matter of public history, manifest on the face of the act, and judicially declared in the leading cases under it, was to relieve this court of the overburden of cases and controversies, arising from the rapid growth of the country, and the steady increase of litigation; and, for the accomplishment of this object, to transfer a large part of its appellate jurisdiction to the Circuit Courts of Appeals thereby established in each judicial circuit, and to distribute between this court and those, according to the scheme of the act, the entire appellate jurisdiction from the Circuit and District Courts of the United States. *McLish* v. *Roff*, 141 U. S. 661, 666; *Lau Ow Bew's Case*, 141 U. S. 583, and 144 U. S. 47.

The act has uniformly been so construed and applied by this court as to promote its general purpose of lessening the burden of litigation in this court, transferring the appellate jurisdiction in large classes of cases to the Circuit Court of Appeals, and making the judgments of that court final, except in extraordinary cases.

It has accordingly been adjudged that a writ of error or appeal directly to this court under section 5, in a case concerning the jurisdiction of the Circuit Court, does not lie until after final judgment, and cannot, therefore, be taken from an order

of the Circuit Court remanding a case to a state court, there being, as said by Mr. Justice Lamar, speaking for this court, "no provision in the act, which can be construed into so radical a change in all the existing statutes and settled rules of practice and procedure of Federal courts, as to extend the jurisdiction of the Supreme Court to the review of jurisdictional cases in advance of the final judgments upon them." *McLish* v. *Roff*, above cited; *Chicago &c. Railway* v. *Roberts*, 141 U. S. 690.

It has also been determined that, in the grant of the appellate jurisdiction to the Circuit Court of Appeals, by section 6, in all cases other than those in which this court has direct appellate jurisdiction under section 5, the exception "unless otherwise provided by law" looks only to provisions of the same act, or to contemporaneous or subsequent acts expressly providing otherwise, and does not include provisions of earlier statutes. *Lau Ow Bew* v. *United States*, 144 U. S. 47, 57; *Hubbard* v. *Soby*, 146 U. S. 56.

In the same spirit, the authority conferred on this court by the very provision on which the petitioners mainly rely, by which it is enacted that "in any such case as is hereinbefore made final in the Circuit Court of Appeals, it shall be competent for the Supreme Court to require, by *certiorari* or otherwise, any such case to be certified to the Supreme Court for its review and determination, with the same power and authority in the case as if it had been carried by appeal or writ of error to the Supreme Court," has been held to be a branch of its jurisdiction which should be exercised sparingly and with great caution, and only in cases of peculiar gravity and general importance, or in order to secure uniformity of decision. *Lau Ow Bew's Case*, 141 U. S. 583, and 144 U. S. 47; *In re Woods*, 143 U. S. 202. Accordingly, while there have been many applications to this court for writs of *certiorari* to the Circuit Court of Appeals under this provision, two only have been granted: the one in *Lau Ow Bew's Case*, above cited, which involved a grave question of public international law, affecting the relations between the United States and a foreign country; the other in *Fabre, Petitioner*, No. 1237 of the present term,

an admiralty case, which presented an important question as to the rules of navigation, and in which the decree of the Circuit Court of Appeals for the Second Circuit reversed a decree of the District Judge, and was dissented from by one of the three Circuit Judges; and in each of those cases the Circuit Court of Appeals had declined to certify the question to this court.

There are much stronger reasons against the interposition of this court to review a decree made by the Circuit Court of Appeals on appeal from an interlocutory order, than in the case of a final decree. Before the act of 1891, as has been seen, no interlocutory order was subject to appeal, except as involved in an appeal from a final decree. The only appeal from an interlocutory order under the act of 1891 is that allowed by section 7 to the Circuit Court of Appeals, the same court to which an appeal lies from the final decree. The question whether a decree is an interlocutory or a final one is often nice and difficult, as appears by the cases collected in *Keystone Co.* v. *Martin*, 132 U. S. 91, and in *McGourkey* v. *Toledo & Ohio Central Railway*, 146 U. S. 536. Whether an interlocutory order may be separately reviewed by the appellate court in the progress of the suit, or only after and together with the final decree, is matter of procedure rather than of substantial right; and many orders made in the progress of a suit become quite unimportant by reason of the final result, or of intervening matters. Clearly, therefore, this court should not issue a writ of *certiorari* to review a decree of the Circuit Court of Appeals on appeal from an interlocutory order, unless it is necessary to prevent extraordinary inconvenience and embarrassment in the conduct of the cause.

In such an exceptional case, the power and the duty of this court to require, by *certiorari* or otherwise, the case to be sent up for review and determination, cannot well be denied, as will appear if the provision now in question is considered in connection with the preceding provisions for the interposition of this court in cases brought before the Circuit Court of Appeals. In the first place, the Circuit Court of Appeals is authorized, " in every such subject within its appellate juris-

diction," and "at any time," to certify to this court "any questions or propositions of law," concerning which it desires the instruction of this court for its proper decision. In the next place, this court, at whatever stage of the case such questions or propositions are certified to it, may either give its instruction thereon, or may require the whole record and cause to be sent up for its consideration and decision. Then follows the provision in question, conferring upon this court authority "in any such case as is hereinbefore made final in the Circuit Court of Appeals," to require, by *certiorari* or otherwise, the case to be certified to this court for its review and determination. There is nothing in the act to preclude this court from ordering the whole case to be sent up, when no distinct questions of law have been certified to it by the Circuit Court of Appeals, at as early a stage as when such questions have been so certified. The only restriction upon the exercise of the power of this court, independently of any action of the Circuit Court of Appeals, in this regard, is to cases "made final in the Circuit Court of Appeals," that is to say, to cases in which the statute makes the judgment of that court final, not to cases in which that court has rendered a final judgment. Doubtless, this power would seldom be exercised before final judgment in the Circuit Court of Appeals, and very rarely indeed before the case was ready for decision upon the merits in that court. But the question at what stage of the proceedings, and under what circumstances, the case should be required, by *certiorari* or otherwise, to be sent up for review, is left to the discretion of this court, as the exigencies of each case may require.

In the first of the cases now before us, the appeal was clearly well taken from the order of the Circuit Court, so far, at least, as the injunction was concerned. If the Circuit Court of Appeals, on the hearing of that appeal, erred in going beyond a modification of the injunction, and in setting aside so much of the orders appealed from as appointed a receiver and permitted him to issue receiver's notes, the error was one in the judicial determination of a case within the jurisdiction of that court, and neither so important in its immediate effect,

nor so far-reaching in its consequences, as to warrant this court in undertaking to control the cause at this stage of the proceedings.

In the first case, therefore, the writ of *certiorari* prayed for is denied, because no reason is shown for issuing it, under the circumstances of the case.

Nor do those circumstances make a case for issuing a writ of mandamus, either to the Circuit Court of Appeals or to the Circuit Court. The decisions of this court upon applications for writs of mandamus since the act of 1891 affirm the principles established in the earlier decisions, before cited. *In re Morrison*, 147 U. S. 14, 26; *In re Hawkins*, 147 U. S. 486; *In re Haberman Manuf. Co.*, 147 U. S. 525; *Virginia* v. *Paul*, *ante*, 107, 124.

In the first case, therefore, the writs of mandamus, as well as the writ of *certiorari*, must be denied.

The second case is governed by the same considerations as the first, except in the following respects:

1st. It is contended that the order of Judge Swayne, setting aside and vacating the order of Judge Pardee appointing Cable receiver, was not such an interlocutory order as an appeal lies from to the Circuit Court of Appeals under section 7 of the act of 1891. 26 Stat. 828. But if that order could not be the subject of a separate appeal, it might clearly, so far as material, be brought before the Circuit Court of Appeals on appeal from the final decree, when rendered. If that court decided erroneously in determining the matter on an interlocutory appeal, that affords no ground for the extraordinary interposition of this court by *certiorari* or mandamus.

2d. It is contended that the original order of Judge Pardee was a nullity, because made by him outside of his circuit, and while the Circuit Court was in session in the district where the suit was pending. But that fact does not appear of record; and if it were proved, the question whether Judge Pardee's order was invalid for that reason (though in itself a question of interest and importance) does not appear to have a material bearing, in any aspect of the case; for whether that order, or the subsequent decree of the Circuit

Court of Appeals, was valid or invalid, the question who should be appointed receiver remained within the jurisdiction of the Circuit Court.

3d. The more important suggestion is that the decree of the Circuit Court of Appeals is void, because Judge Pardee took part in the hearing and decision in that court, though disqualified from so doing by section 3 of the Judiciary Act of 1891, which provides that " no justice or judge, before whom a cause or question may have been tried or heard " in the Circuit Court. " shall sit on the trial or hearing of such cause or question in the Circuit Court of Appeals." 26 Stat. 827. The question whether this provision prohibited Judge Pardee from sitting in an appeal which was not from his own order, but from an order setting aside his order, is a novel and important one, deeply affecting the administration of justice in the Circuit Court of Appeals. If the statute made him incompetent to sit at the hearing, the decree in which he took part was unlawful, and perhaps absolutely void, and should certainly be set aside or quashed by any court having authority to review it by appeal, error or *certiorari*. *United States* v. *Lancaster*, 5 Wheat. 434; *United States* v. *Emholt*, 105 U. S. 414; *The Queen* v. *Justices of Hertfordshire*, 6 Q. B. 753; *Oakley* v. *Aspinwall*, 3 N. Y. 547; *Tolland* v. *County Commissioners*, 13 Gray, 12.

The writ of *certiorari*, authorized by the act of 1891, and prayed for in this case, being in the nature of a writ of error to bring up for review the decree of the Circuit Court of Appeals, the question whether the writ should be granted rests in the discretion of this court; but when the writ has been granted, and the record certified in obedience to it, the questions arising upon that record must be determined according to fixed rules of law. *Harris* v. *Barber*, 129 U. S. 366, 369.

For the reasons above stated, this court is of opinion that the writ of *certiorari* prayed for in the second case should not be granted, unless Judge Pardee was disqualified by the act of 1891 to sit at the hearing in the Circuit Court of Appeals; but that, if he was so disqualified, the writ should be granted,

for the purpose of bringing up and quashing the decree of court ; that there should, therefore, be a rule to show cause why a writ of *certiorari* should not issue on this ground and for this purpose only ; and that the question whether the decree of. the Circuit Court of Appeals was void, by reason of Judge Pardee's having taken·part in it, can more fitly be determined on further argument upon the return of that court to the rule to show cause. *Ex parte Dugan*, 2 Wall. 134.

If the decree of the Circuit Court of Appeals is void, because one of the judges who took part in the decision was forbidden by law to sit at the hearing, a writ of *certiorari* to that court to bring up and quash its decree is manifestly a more decorous, as well as a more appropriate, form of proceeding than a writ of mandamus to the Circuit Court to disregard the mandate of the appellate court.

The following orders, therefore, will be entered in these two cases :

> *In No. 14, writs of mandamus and certiorari denied; and petition dismissed.*
>
> *In No. 15, writs of mandamus denied; and rule granted to show cause why a writ of certiorari should not issue to bring up and quash the decree of the Circuit Court of Appeals.*

THE CHIEF JUSTICE was not present at the argument of these cases, and took no part in their decision.

- - -

On April 3, the petitioner moved this court to continue in force the stay of proceedings in No. 14 until the final disposition of No. 15. The court denied the motion. Thereupon the petitioner moved, and was permitted by the court, to dismiss the petition in No. 15.