METROPOLITAN EDISON CO. et al. v. FEDERAL POWER COMMISSION.

No. 6447.

Circuit Court of Appeals, Third Circuit.

Jan. 27, 1938.

944

Walter Biddle Saul, Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., and Travis, Brownback & Paxson, of New York City, for petitioners.

Dozier A. DeVane, Oswald Ryan, and Lambert McAllister, all of Washington, D. C., for respondent.

· Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

DAVIS, Circuit Judge.

The Public Service Commission of Pennsylvania instituted an inquiry and investigation into certain contracts and working arrangements which the petitioners and four other Pennsylvania corporations had with third parties. These other four corporations were not electric light or power companies. They were a bus company, a gas company, a water company, and a street railway company and have now been dropped from these proceedings. The Pennsylvania Public Service Commission, hereinafter called the Pennsylvania Commission, desired certain information in its investigation of the petitioners but could not secure it under the laws of Pennsylvania. The Governor and the Pennsylvania Commission called upon the Federal Power Commission, hereinafter called the Federal Commission, for assistance in securing the desired information. Thereupon the Federal Commission began an investigation of the petitioners in an effort to secure the information for use by the Pennsylvania Commission in its local or state problems.

Pursuant to its undertaking, the Federal Commission on January 6, 1936, made an "Order of Inquiry and Investigation of" the petitioners, the purpose of which was, the petitioners allege, to aid the Pennsylvania Commission in enforcing local law in regulating local affairs. The petitioners filed answers to this order of January 6, 1936, challenging the jurisdiction and power of the Federal Commission to make the order.

Investigators or "accounting representatives" furnished the Federal Commission by the Pennsylvania Commission, made an accounting and report to the Federal Commission which thereupon made another order on January 26, 1937, directing the petitioners and thirty-three other companies to appear before it on March 3, 1937, in the Federal Commission's hearing room in

BIGGS, Circuit Judge, dissenting in part.

Washington, D. C., for a hearing "to ascertain and determine all facts, conditions, practices and matters regarding the ownership, operation, management and control of said respondents or either of them; all contracts and working arrangements between said respondents and any person who controls, directly or indirectly, said respondents or who is controlled by any such person, and all expenditures and obligations incurred thereunder that in any way affect or relate to the business of said respondents or either of them," etc.

The petitioners believing themselves aggrieved by the order, on February 23, 1937, petitioned the Federal Commission for a rehearing as provided in section 313 of the Federal Power act, 16 U.S.C.A. § 825l, as a prerequisite for a court review. The petitioners raised two questions for the determination of the Federal Commission. They said that: (1) The Federal Commission did not have power to conduct an investigation for the sole purpose of supplying information to a state commission for use in a proceeding designed to impose penalties under local law; and (2) the Federal Commission did not have jurisdiction over three of the petitioners because they operated entirely within the Commonwealth of Pennsylvania having no transmission lines, no interstate connections, transacting no business in interstate commerce and were not a "public utility" within the meaning of the Federal Power Act.

The day after the petition for rehearing was filed, the Federal Commission adjourned the hearing set for March 3, 1937, without day.

On March 24, 1937, the Federal Commission notified the petitioners that it had "granted the petition for rehearing * * * and assigned the matters involved in this proceeding for hearing in the hearing room of the Commission in Washington, D. C., on April 14, 1937 at 10 A. M."

At the rehearing the petitioners offered evidence to show that three of them were not "public utilities" as defined by the Federal Power Act and that the purpose of the inquiry and investigation was to supply information to the Pennsylvania Commission for use in local proceedings designed to impose penalties under local, state law.

These were the only issues of fact raised by the petition and the evidence of the petitioners. The Federal Commission, the petitioners allege, at the conclusion of the evidence of the petitioners over their vigorous objection, introduced evidence relating to the entire subject-matter of the orders of January 6, 1936, and January 26, 1937, and in no way limited to the issues raised by the petition. They charge that the Federal Commission was continuing its investigation under the guise of conducting a rehearing for the purpose of determining the issues raised by the petition; that evidence was offered, for example, to show payments to various companies as far back as 1928, expenses incurred by petitioners in opposing the Wheeler-Rayburn Bill; charges for stationery and supplies; to show whether or not a foreign corporation (not one of the petitioners) was properly domesticated in Pennsylvania; the contents of minute books of foreign corporations other than the petitioners; what constitutes sound accounting practice; the business relations of persons other than petitioners with companies not claimed to be related to them in any way, etc.

They contend that the evidence introduced to establish these and other facts relates to the subject-matter of the orders for the investigation of the petitioners and not to the issues raised in the petition for rehearing.

After the Federal Commission refused to change its course, a petition was filed in this court praying for an injunction to restrain the Federal Commission from thus continuing its investigation until it had determined the issues raised in the petition. The petitioners say that if the Commission is not restrained from continuing the investigation under the guise of a rehearing, the questions raised in the petition will be moot when the rehearing is completed and this court will be deprived of its appellate jurisdiction.

The Federal Commission says that:

1. This court does not have jurisdiction to review the Federal Commission's order of January 26, 1937; and,

2. If it does have such jurisdiction, the course pursued by the Federal Commission on the rehearing, if continued, was not such as to destroy the appellate jurisdiction of the court.

The Federal Commission contends that the so-called order of January 26, 1937, is really not an "order" but the mere notice of a hearing coupled with a subpœna duces tecum.

If this contention is true, the "Order of Inquiry and Investigation of Metropolitan

Edison Company et al.," made on January 6, 1936, was a mere notice, for that one and the one of January 26, 1937, are both called "order." Both begin and end in the same manner. After the declaratory parts, both orders continue with the mandate, "Now, therefore, it is ordered"; in the one case, "That an investigation be and the same is hereby instituted," and in the other, "That a hearing be held," etc. In both orders the petitioners are required to do definite things and to submit themselves to the further direction of the Federal Commission. The order has all the affirmative characteristics of a genuine order of the Federal Commission as we think it was intended to be, and constrained the petitioners to obedience at the risk of suffering severe penalties, civil and criminal, imposed by sections 315 and 316 of the act, 16 U.S.C.A. §§ 825n, 825o.

■ The next technical question raised by the Federal Commission is that this order was not a *final* order and in consequence was not reviewable.

Section 313(a) of the act, 16 U.S.C.A. § 825l(a), provides that: "Any person, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this Act [chapter] to which such person, State, municipality, or State commission is a party may apply for a *rehearing* within thirty days after the issuance of such order. * * * No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a *rehearing* thereon."

In order to preserve the right to a rehearing, it is necessary that application therefor shall be made within thirty days after the order was made and no proceeding to review it shall be brought unless application for a rehearing has been made. Implicit in this provision is the right to a review of "any order," final or interlocutory, by which any person is aggrieved if he makes application for a rehearing within thirty days.

■ Coming to the merits of the case, when the petition was filed and granted it was the plain duty of the Federal Commission to determine the issues raised in the petition. We are going to remand the case for such determination. In doing so the evidence admitted should be strictly confined to the two issues raised in the petition and not extended to the scope of the investigation proposed in the orders of January 6, 1936, and January 26, 1937. The relation of the evidence to the two questions involved should be apparent and logical and not far-fetched and remotely inferential. Some of the evidence admitted when the case was before the Federal Commission on rehearing was not relevant and material. If both sides will seek to produce only such evidence as is clearly admissible, we venture to hope that the determination of the issues will be speedy, final and satisfactory.

■ In remanding the case, we express no opinion on the merits of the questions to be decided. The determination of them is for the Federal Commission under relevant and competent evidence. The act has provided a review by this court of the orders of the Federal Commission, and no order on the merits is now before us. These proceedings were taken so that the questions would not be moot if and when they come here.

The Federal Commission is restrained from proceeding with its proposed inquiry and investigation in accordance with its two orders of January 6, 1936, and January 26, 1937, until the questions raised in the petition for rehearing are determined by it.

Judge BIGGS does not concur in this opinion as a whole and within a few days will file an opinion dissenting in part and stating his views.

BIGGS, Circuit Judge (dissenting in part, concurring in part).

I think that I should make plain in what respects my opinion is in accord with or differs from that of the majority in the case at bar.

In August, 1935, the Pennsylvania Public Service Commission commenced investigations of the petitioners and certain other Pennsylvania corporations to ascertain facts in respect to their operating expense accounts and whether or not penalties should be imposed for certain alleged infractions of the Pennsylvania Utility Law. Certain phases of the investigation apparently could not be conducted adequately under the law of Pennsylvania and, at the request of the Pennsylvania Commission and the Governor, the Federal Power Commission, upon January 6, 1936, pursuant to section 209(b) and (c) [1] of the Federal Pow-

---

1 "Sec. 209(a). * * *
"(b) The Commission may confer with any State commission regarding the relationship between rate structures, costs,

er Act, 16 U.S.C.A. § 824h(b, c) ordered an investigation of the petitioners.

The order of the Federal Power Commission of January 6, 1936, recited that full information concerning contracts, working arrangements, expenditures, and obligations incurred by the petitioners was necessary to enable the Commission to determine whether the petitioners or other persons were violating the Federal Power Act, to ascertain the effect of existing contracts for power upon the cost of production and transmission of electric energy by means of utility facilities under the jurisdiction of the Commission, and to aid the Commission in the enforcement of the provisions of the Federal Power Act. Having made this order, the Commission proceeded by its accountants to commence an investigation of the affairs of the petitioners and those corporations, copartnerships, or individuals allegedly connected with the petitioners. The petitioners permitted the examination by the Commission of the books and records of certain companies, conceding these companies to be affiliates, but refused to permit the examination of the books and records of certain other companies, copartnerships, and individuals because the petitioners would not concede them to be affiliates.

The accounting representatives of the Commission therefore prepared and submitted a report to the Commission which presented data allegedly tending to prove that certain named corporations, copartnerships, and individuals controlled the petitioners and that these persons included both "conceded" and "nonconceded" affiliates of the petitioners. The Commission thereupon, on January 26, 1937, ordered a hearing and gave notice to these corporations, copartnerships, and individuals to appear for examination before the Commission, with their books and records, to the end that the Commission might ascertain facts tending to prove or disprove the connection, or lack of it, of the "nonconceded" affiliates to the petitioners.

Section 313(a) of the Federal Power Act, 16 U.S.C.A. § 825*l*(a), provides that any person aggrieved by order of the Commission may apply for a rehearing within thirty days after the issuance of such order. The subsection then states, "No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon." Subsection (b) of section 825*l*, provides a method for the review of an order of the Commission. If the petitioners were to obtain a review of the order of January 26, 1937, it was necessary therefore that they file a petition for rehearing with the Commission as provided by the statute. Accordingly, upon the 23d of February, 1937, the petitioners filed a petition for rehearing with the Commission, alleging that the Commission was without jurisdiction of the petitioners or the subject-matter in the investigation, that the investigation itself was being conducted for an improper purpose and in derogation of the constitutional rights of the petitioners. The petition for rehearing further alleged that three of the petitioners, viz., Erie Lighting Company, Solar Electric Company, and the Clarion River Power Company, were not engaged in the transmission or sale of electric energy in interstate commerce and neither owned nor operated facilities for its transmission or sale. The petition prayed that the order of January 26, 1937, be vacated and the proceedings stayed pending the disposition of the petition for rehearing.

The petition for rehearing was in the nature of a motion to dismiss the proceeding for want of jurisdiction in the Commis-

accounts, charges, practices, classifications, and regulations of public utilities subject to the jurisdiction of such State commission and of the Commission; and the Commission is authorized, under such rules and regulations as it shall prescribe, to hold joint hearings with any State commission in connection with any matter with respect to which the Commission is authorized to act. The Commission is authorized in the administration of this Act to avail itself of such cooperation, services, records, and facilities as may be afforded by any State commission.

"(c) The Commission shall make available to the several State commissions such information and reports as may be of assistance in State regulation of public utilities. Whenever the Commission can do so without prejudice to the efficient and proper conduct of its affairs, it may upon request from a State make available to such State as witnesses any of its trained rate, valuation, or other experts, subject to reimbursement to the Commission by such State of the compensation and traveling expenses of such witnesses. All sums collected hereunder shall be credited to the appropriation from which the amounts were expended in carrying out the provisions of this subsection."

sion. To attempt a simile, it was as if a defendant in a suit at law had moved to dismiss a declaration upon the ground that the court lacked jurisdiction both of the parties and of the subject-matter. No testimony had been taken; no hearings had been held by the Commission. The extent of the investigation upon the date of the filing of this petition consisted of an examination of books of certain companies by the accountants of the Commission.

Upon March 23, 1937, the Commission granted the petition for rehearing and assigned it for hearing upon April 14, 1937, and upon this date the hearing took place. The petitioners introduced evidence to prove that the Commission had no jurisdiction over Erie Lighting Company, Solar Electric Company, and the Clarion River Power Company; that the investigation was being carried on by the Federal Power Commission for the purpose of aiding the Pennsylvania Commission. Evidence was then offered on behalf of the Commission pertaining to its jurisdiction to compel the production of books and records of alleged nonaffiliates of the petitioners in order that the control of the petitioners might be established. Certain of this evidence related to the identification of charges over a period of years made by one company to another, to allocation of expenses in fighting the Wheeler-Rayburn Bill through the medium of a corporation designated as Utility Clearing Corporation, to questions of qualification of a foreign corporation, and to charges reflected on the books of divers companies during 1934, arising from billings for services, materials, donations, and expenses. Some of the testimony offered may or may not have been of evidentiary value and may or may not have tended to show the connections of the petitioners with alleged nonaffiliates. Some of the testimony taken seems to have failed to meet the requirements of the technical rules of evidence, but it should be noted that the Commission is not bound by such rules. [2] In my opinion, however, the question of pertinency of the testimony offered before the Commission cannot be raised by the record now before us.

Abruptly, the proceedings before the Examiner were terminated by the petition for injunctive relief filed in this court. The petitioners prayed that the Commission be enjoined from taking any further steps in respect to the issues raised by its investigation until the rehearing had been disposed of and to enjoin the Commission from introducing any evidence except such as might prove that Erie Lighting Company, the Clarion River Power Company, and the Solar Electric Company were in fact "public utilities" within the terms of the Federal Power Act. It will therefore be seen that the petitioners sought to limit the jurisdictional inquiry of the Commission to a very narrow ground and to require it to decide the jurisdictional question piecemeal. The Examiner refused to so limit the inquiry and allowed questions of jurisdiction raised by the inquiry and investigation as a whole. The rule to show cause sought by the petitioners was granted by his court and thereafter a stay was given.

The petitioners contend that the Commission by an enlargement of the inquiry into questions of jurisdiction beyond those presented by their petition for rehearing jeopardize the appellate jurisdiction of this court, that by proceeding with the hearing and requiring evidence to be given concerning companies which are nonadmitted affiliates, the Commission must render moot the question of the right of the Commission to require such information. The petitioners seek to enjoin such action by the Commission, and to this end, invoke the provisions of section 262, the "all writs" section of the Judicial Code, 28 U.S.C.A. 377.

It should be borne in mind that the Commission now seeks information in a public hearing; that at this stage of the proceedings the Commission has done nothing more than to require that named corporations, individuals, and copartnerships appear before it with books and records. The Commission has taken some testimony and now seeks to receive further evidence tending to show or disprove connections and control of the petitioners by way of affiliation. All other questions aside, I think that this

---

[2] Section 308(b) of the Federal Power Act, 16 U.S.C.A. § 825g(b) provides: "All hearings, investigations, and proceedings under this Act [chapter] shall be governed by rules of practice and procedure to be adopted by the Commission, and in the conduct thereof the technical rules of evidence need not be applied. No informality in any hearing, investigation, or proceeding or in the manner of taking testimony shall invalidate any order, decision, rule, or regulation issued under the authority of this Act [chapter]."

court should not hold that any individual, copartnership or corporation may refuse information germane to this administrative inquiry because of reliance upon the commerce clause, article 1, § 8, cl. 3, or the Fifth Amendment. It may be the case that the disclosure of such information will result in charges based upon alleged violations of the laws of Pennsylvania, but I think that we cannot concern ourselves with this. It cannot be assumed that investigations of the Federal Power Commission constitute mere wanton meddling or are for a disguised purpose. We must assume that the purposes of the Commission's inquiry are of penetration into the intricate affiliations of the Associated Gas and Electric System as that system affects the public interest. Even if the whole of that system is not engaged in the transmission and sale of electric energy in interstate commerce, the authority of the Commission to conduct such investigation as in the case at bar is expressed in section 311 of the Act, 16 U.S.C.A. § 825j, [3] and the powers of investigation thus given to the Commission are fraught with the plainest public interest.

The question presented to us, however, is a very narrow one. If this court has jurisdiction of the cause presented by the petition for injunctive relief, it has such solely to the end that its appellate jurisdiction may not be destroyed or impaired. American Construction Co. v. Jacksonville, T. & K. W. Railway Co., 148 U.S. 372, 379, 13 S.Ct. 758, 37 L.Ed. 486; Whitney v. Dick, 202 U.S. 132, 26 S.Ct. 584, 50 L.Ed. 963; McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762. This question in turn rests upon the question of whether or not the order of the Commission of January 26, 1937, and the proceedings thereunder are by their nature subject to review. The majority opinion of the court holds the order of the Commission reviewable. From this ruling I must respectfully dissent.

Whether or not the order of January 26, 1937, be in fact an order of inquiry regularly entered before a hearing of the Federal Power Commission or whether it be of the nature of a mere subpoena duces tecum, it is not a final order entered after hearing and finding of fact and is procedural and interlocutory in its nature, and therefore, if the investigation proposed by the order is proceeded with, the appellate jurisdiction of this court will not be destroyed.

Subsection (b) of section 313 of the Federal Power Act, 16 U.S.C.A. § 825*l*(b) provides: "(b) Any party to a proceeding under this Act [chapter] aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the Circuit Court of Appeals of the United States for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall forthwith be served upon any member of the Commission and thereupon the Commission shall certify and file with the court a transcript of the record upon which the order complained of was entered. Upon the filing of such transcript such court shall have exclusive jurisdiction to affirm, modify, or set aside such order in whole or in

[3] Sec. 311. "In order to secure information necessary or appropriate as a basis for recommending legislation, the Commission is authorized and directed to conduct investigations regarding the generation, transmission, distribution, and sale of electric energy, however produced, throughout the United States and its possessions, whether or not otherwise subject to the jurisdiction of the Commission, including the generation, transmission, distribution, and sale of electric energy by any agency, authority, or instrumentality of the United States, or of any State or municipality or other political subdivision of a State. It shall, so far as practicable, secure and keep current information regarding the ownership, operation, management, and control of all facilities for such generation, transmission, distribution, and sale; the capacity and output thereof and the relationship between the two; the cost of generation, transmission, and distribution; the rates, charges, and contracts in respect of the sale of electric energy and its service to residential, rural, commercial, and industrial consumers and other purchasers by private and public agencies; and the relation of any or all such facts to the development of navigation, industry, commerce, and the national defense. The Commission shall report to Congress the results of investigations made under authority of this section."

part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings which, if supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in sections 239 and 240 of the Judicial Code, as amended (U.S.C., title 28, secs. 346 and 347)."

The order of January 26, 1937, is merely an interlocutory or procedural order. The Commission, pursuant to section 308 of the act, 16 U.S.C.A. § 825g, heretofore referred to, prescribes its own rules of procedure and must itself pass upon the propriety of the evidence offered and its admissibility. For this court to pass upon such questions during the pendency of a hearing before the Commission is to compel us in effect to sit with the Commission throughout every phase of its inquiry. If such a view be adopted, the appellate court, as in the case at bar, in limine may be called upon to determine the jurisdiction of the Commission over the inquiry it seeks to conduct, to pass upon all questions of evidence offered in the course of the investigation and upon the pleadings, all before the determination of any final issue by the Commission. The result would be precisely similar to that which would come to pass if a review would lie to an appellate court from every ruling or order of a trial court, no matter whether interim, interlocutory, procedural, or final. The hearings before the Commission would be subjected to interminable interruptions by petitions for review to the Circuit Courts of Appeals to determine the legality of every order made by the Commission. Such a result inevitably would emasculate the Federal Power Act and render the Commission unable to pass upon the very matters for which it was created, matters greatly affecting the public interest. In my opinion such a result would be intolerable.

Moreover, the language of section 313 of the act, 16 U.S.C.A. § 825l, does not lend itself to such a conclusion. Subsection (b) uses specific language which compels an opposite interpretation. That subsection states that the finding of the Commission as to facts, "if supported by substantial evidence, shall be conclusive." This language is substantially similar to that used by Congress in sections of the laws providing for reviews from similar administrative and quasi-judicial tribunals. The subsection further speaks of the right of a party to a proceeding to adduce additional evidence upon a showing to the court of appeals that such evidence is material to the issues. It provides that the Commission may modify its findings as to the facts by reason of such additional evidence. These provisions plainly indicate that findings of fact shall be made by the Commission and that orders based thereon are subject to review. Subsection (b) speaks of the "transcript of the record" to be certified to the Circuit Court of Appeals. Such a phrase used in its ordinary connotation indicates the record as a whole upon which the findings of the court below are based. In the case at bar there is neither transcript of record nor findings of fact. Further the use of the word "rehearing" in subsection (a) plainly presupposes that prior hearings have been had and that findings of fact have been made by the Commission upon which an order final in nature has been based.

The right of an inferior court to try a case submitted to it, undisturbed by interference from an appellate tribunal, is established beyond any question. Bank of Columbia v. Sweeney, 1 Pet. 567, 569, 7 L. Ed. 265; Life & Fire Insurance Company of New York v. Adams, 9 Pet. 573, 602, 9 L.Ed. 234; American Construction Company v. Jacksonville, T. & K. W. Railway Company, supra; Dooley Improvements,

Inc., v. Nields, District Judge, 3 Cir., 72 F.2d 638; Raritan Copper Works v. Elliott, 3 Cir., 271 F. 284.

In the case at bar there is no order which is the equivalent of "a judgment entered upon a state of facts," as in the case of American Sumatra Tobacco Corp. v. Securities & Exchange Commission, 68 App.D.C. 77, 93 F.2d 236. The similarity between the review provisions of the Federal Power Act and the Securities, Exchange Act, 15 U.S.C.A. § 77b et seq., should be noted.

In the case of Minneapolis Chamber of Commerce v. Federal Trade Commission, 280 F. 45, 47, the Circuit Court of Appeals for the Eighth Circuit passed upon the right of the appellate court to review a preliminary order of the Federal Trade Commission. As in the case at bar, it was contended by the petitioner that the Commission was without jurisdiction both of the parties and the subject-matter. In dismissing the petition for want of jurisdiction, the court stated: "What is really sought by petitioners is that this court should halt inquiry at the threshold, exercising, in effect, the powers of a court of original jurisdiction, in which a cause is pending, to rule in limine upon the propriety of the action and whether it should proceed further. The procedure invoked is similar, in effect, to that prevailing in a court of original jurisdiction, which has control of the successive steps of pleading, practice, trial, and final judgment or decree. But it must be remembered that this court has no original jurisdiction of this nature. Its functions, under the act before us, are confined to a review of certain acts of the Federal Trade Commission, which are specifically defined by the Congress. This act creates powers not otherwise conferred upon Circuit Courts of Appeals, and such courts are limited strictly to the powers thus specified. It was not intended that the Circuit Courts of Appeals should be drawn into original conduct of these investigations. If this court is to exercise plenary power and control in determining at the outset what party shall be dealt with, what investigation shall be made, and what recommendation submitted, then it has, in effect, been constituted an original trial tribunal of controversies of this nature. This was in nowise contemplated, nor would it comport with the legitimate practical functions of a court of this nature."

The provisions of section 313 of the Federal Power Act, 16 U.S.C.A. § 825l, are very similar to those of the Interstate Commerce Act. The latter act confers original jurisdiction upon the district courts of the United States of "cases brought to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission." June 18, 1910, c. 309, § 1, 36 Stat. 539, March 3, 1911, c. 231, § 207, 36 Stat. 1148, October 22, 1913, c. 32, 38 Stat. 219, 28 U.S.C.A. § 41, subd. (28). In the leading case of United States v. Illinois Central R. Co., 244 U.S. 82, 37 S.Ct. 584, 587, 61 L.Ed. 1007, the Supreme Court reversed an order of a District Court setting aside a procedural order of the Interstate Commerce Commission. The order of the Commission referred to set a cause for hearing at a specified time and place. The Supreme Court in its opinion stated: "The notice, therefore, had no characteristic of an order, affirmative or negative. It was a mere incident in the proceeding, the accident of the occasion,—in effect, and, it may be contended, in form, but a continuance of the hearing. The fact that the continuance was to another day and place did not change its substance or give it the character described in Procter & G. Company v. United States [225 U.S. 282, 32 S.Ct. 761, 56 L.Ed. 1091],—one which constrained the railroad company to obedience, unless it was annulled or suspended by judicial decree."

The powers of the Federal Power Commission are clearly defined by the Federal Power Act. Such powers expressly include the right to prohibit the issuance of securities or assumption of liability by a utility; to declare rates and charges of utilities to be unjust and unreasonable; to approve or disapprove the sale or lease of utility facilities; and to determine by order the accounts in which particular outlays and receipts shall be entered, charged, or credited. Orders, final in their nature, entered by the Commission after hearing and findings of fact, in the premises indicated, are subject to the review of the Circuit Courts of Appeals. Other orders, interim, procedural, or interlocutory, are not so reviewable. To hold otherwise, in my opinion, would constitute an unwarranted invasion of the powers of the legislative and executive branches of the Government.

In view of the foregoing it follows that the appellate jurisdiction of this court is in no wise jeopardized or impaired by the or-

der of the Commission of January 26, 1937, or the proceedings of the Commission thereunder, and that therefore the provisions of section 262, the "all writs" section, of the Judicial Code, 28 U.S.C.A. § 377, cannot be invoked successfully by the petitioners.

I therefore concur in the majority opinion of the court only to the extent that it permits the resumption of hearings upon the petition for rehearing, but I nowise concur in and dissent from the ruling that the inquiry by the Commission upon the petition for rehearing must be limited as sought by the petitioners. In my opinion this court is without jurisdiction to restrain or in any wise interfere with the proceedings now before the Commission, and will remain so until some order of the nature of a judgment entered upon a state of facts be made by the Commission and a review thereof is sought. Until such time the Commission must be permitted to proceed with its investigation undisturbed by the mandates of this court precisely as an inferior court would be allowed to proceed with the trial of a pending cause. The petition filed herein should be dismissed.

In view of the great public interest in the questions presented by the case at bar and the gravity of the court's decision, this dissent is written, as stated by Judge Woolley in General Electric Co. v. De Forest Radio Company, 3 Cir., 44 F.2d 931, 946, "with the hope that it will arrest the attention of the reviewing court."